UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BERNABE GODINEZ HERNANDEZ,

Plaintiff,

v.

MARKWAYNE MULLIN *et al.*,

Defendants.

Case No. 3:26-cv-00219-ART-CSD

ORDER ON PETITIONER'S MOTION TO ENFORCE (ECF No. 30)

On April 6, 2026, the Court held a hearing on Petitioner Bernabe Godinez Hernandez's petition for a writ of habeas corpus and motion for a temporary restraining order. (ECF No. 15.) Less than 24 hours later, the Court granted the petition and ordered Petitioner's immediate release. (ECF No. 16.) But between the hearing and the issuance of the Court's written order, Respondents removed Mr. Godinez Hernandez from the United States. (ECF No. 19.)

Before the Court now is Mr. Godinez Hernandez's motion to enforce its order granting habeas relief by requiring Respondents to take all available lawful steps to facilitate Mr. Godinez Hernandez's return to the United States. (ECF No. 30.) Respondents filed a notice of non-opposition. (ECF No. 33.) The Court thus grants Mr. Godinez Hernandez relief.

## I. BACKGROUND

The Court incorporates the discussion of Mr. Godinez Hernandez's immigration history laid out in the Court's prior habeas order. (ECF No. 16 at 1-2.) As stated there, Mr. Godinez Hernandez was recently detained subject to a reinstated order of removal, despite having been granted deferred action status in 2023 pursuant to a bona fide determination on his application for a U nonimmigrant visa. (*Id.*) At the April 6, 2026 hearing on Mr. Godinez Hernandez's

habeas petition and motion for a temporary restraining order (ECF No. 15), Respondents conceded that Mr. Godinez Hernandez had deferred action status. Respondents also conceded that if the Court found that having deferred action status bars removal, then there would be no valid basis for detaining Mr. Godinez Hernandez under 8 U.S.C. § 1231.

The April 6 hearing was held from 3:35 p.m. until 4:12 p.m. Pacific Standard Time in the federal courthouse in Reno. (*Id.*) At the close of the hearing, the Court stated from the bench that it suspected that it would grant relief and order Mr. Godinez Hernandez released, but that given the late hour and the fact that Mr. Godinez Hernandez was at that time detained in Arizona, where it was already nearly 5:15 p.m. Mountain Standard Time, the Court anticipated that its written order would most likely be issued the following day. The Court also notified counsel that the written order would request a status report to ensure that matters were handled expeditiously.

The Court issued its order the next day, on April 7, at approximately 1:30 p.m. PST. (ECF Nos. 16, 20.) The Court concluded that "[a]s other courts in this circuit have repeatedly found, . . . [a] person with a valid grant of deferred action cannot be removed" or detained. (ECF No. 16 at 4.) The Court thus ordered Respondents to "IMMEDIATELY RELASE Petitioner from detention ON HIS OWN RECOGNIZANCE, and in any event no later than 5:00 p.m. TODAY April 7, 2026." (*Id.* at 6.) The Court also instructed Respondents to provide a status report on Petitioner's release within one week. (*Id.*)

That is not what transpired. Instead, Mr. Godinez Hernandez's counsel filed an emergency notice on April 9 informing the Court that Mr. Godinez Hernandez had been removed, not released. (ECF No. 17.) In response, the Court instructed Special Assistant U.S. Attorney Martin Mayer to file a sworn declaration describing all his communications with DHS personnel regarding Mr. Godinez

Hernandez following the April 6 hearing, and instructed Respondents to provide evidence regarding the events surrounding Petitioner's removal. (ECF No. 18.)

Respondents confirmed that Petitioner was removed to Guatemala at 2:15 a.m. PST on April 7, 2026 (ECF Nos. 19, 21-1), between the time when the Court indicated its likelihood of granting relief at the hearing and when it issued its written order confirming that course of action. Respondents further explained that by the time ICE officials received the Court's order, Mr. Godinez Hernandez had already landed in Guatemala. (ECF No. 21-1 at 2.) Respondents acknowledged that the removal occurred despite Mr. Godinez Hernandez having valid deferred action status, which they confirmed "was not revoked, suspended, or otherwise ineffective." (ECF No. 21.)

The Court then granted Mr. Godinez Hernandez the opportunity for limited discovery so that he could propound discovery requests on Respondents. (ECF Nos. 25.) Having confirmed the timing of events, Mr. Godinez Hernandez then filed the present motion to enforce (ECF No. 30), to which Respondents filed a notice of non-opposition (ECF No. 33.)

## II. DISCUSSION

Mr. Godinez Hernandez requests that the Court issue equitable relief "to give meaningful effect to a habeas judgment already entered in [his] favor." (ECF No. 30 at 2-3.) Respecting the balance of power between the judicial and executive branches, Mr. Godinez Hernandez "does not ask the Court to dictate the particular mechanism Respondents must employ or to require an act beyond their lawful authority. He asks the Court [only] to require Respondents to use the lawful means available to them so that the relief this Court already granted is not reduced to a judgment without effect." (*Id.* at 3.) Mr. Godinez Hernandez argues that such relief is justified in part because the basis for granting habeas relief in the first place—his deferred action status—is still intact, as Respondents have conceded. (*Id.* at 9-10.) He cites numerous cases in which courts have exercised

their authority to enforce habeas relief even after the recipient of the relief was removed from the country. (*Id.* at 10-14.)

"There [is] no question that courts have inherent power to enforce compliance with their lawful orders[.]" *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) (discussing "the power of a district court to enforce its own properly issued orders" in the immigration context). Indeed, Respondents do not oppose Mr. Godinez Hernandez's motion to enforce the Court's order granting habeas relief (ECF No. 33), thereby conceding that the Court may entertain Mr. Godinez Hernandez's motion. Nor do they object to the substance of the relief sought. (*Id.*)

The question, then, is precisely what relief the Court may afford. Respondents removed Mr. Godinez Hernandez despite acknowledging that he had valid deferred action status and after the Court indicated at the hearing that it would be issuing an order likely granting relief as soon as possible. It is also worth noting that the Court's service order, dated March 30, 2026, "ordered that Respondents shall not transfer Petitioner out of this District unless the Court grants a motion or stipulation to modify this order." (ECF No. 3 at 3.) To be sure, the evidence shows that Mr. Godinez Hernandez was transported to Arizona after he filed his petition on March 27 but before the service order was issued on March 30 to prohibit such transfer (ECF No. 21-1 at 2), and removed to Guatemala after the April 6 hearing on the petition but before the written order was issued the next day granting relief (ECF Nos. 19, 20). As both Mr. Godinez Hernandez and this Court recognize (ECF No. 30 at 2), based on this timing, the issue is thus *not* whether Respondents knowingly violated an existing order from this Court; rather, at each point, they acted just before a binding order was issued to restrict the precise action they had taken.

Despite there being no evidence of direct violation of court orders, the Court concludes that Mr. Godinez Hernandez is entitled to some relief. It has long been

settled that habeas relief is not foreclosed when a petitioner is removed from the country while claims related to their petition remain pending. *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[Noncitizens] who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."). The Court's April 7 order granting habeas relief to Mr. Godinez Hernandez therefore retains certain force even though Mr. Godinez Hernandez was removed. *Cf. Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (Apr. 10, 2025) (affirming a district court order directing the federal government to "facilitate" the return of a habeas petitioner whom the government had unlawfully removed). And in effectuating its habeas grant, the Court has discretion to craft an equitable remedy "as law and justice require." 8 U.S.C. § 2243; *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (explaining that 8 U.S.C. § 2243 "does not limit the relief that may be granted [as] to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted").

Similarly, the fact that Mr. Godinez Hernandez was removed (less than 12 hours) before the Court issued its habeas order does not negate the Court's ability to enforce. "Courts, including district courts, regularly find that return is the appropriate remedy when a removal is found to be unlawful." *See, e.g., D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 406 (D. Mass. 2025) (collecting cases across jurisdictions); *L. v. U.S. Immigr. & Customs Enf't*, 403 F. Supp. 3d 853, 859-60 (S.D. Cal. 2019) (collecting Ninth Circuit cases for the same principle); *Abrego Garcia*, 145 S. Ct. at 1018. By Respondents' own admission, Mr. Godinez Hernandez's removal was indeed unlawful because of his valid deferred action status that had not been "revoked, suspended, or otherwise [made] ineffective." (ECF No. 21); *see also* (ECF No. 16 at 4-5) (this Court concluding that "[u]nder law, a person with deferred action is not removable"). Declining to grant relief in this case would thus effectively accept the principle

that Respondents "could deport and incarcerate any person . . . without legal consequence, so long as [they do] so before a court can intervene." *Id.* at 1019 (Sotomayor, J., separate opinion). That principle is inconsistent with federal habeas law and the Constitution. *See* 8 U.S.C. § 2241; *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").

The Court thus issues the same relief ordered in like instances by courts across this country: Respondents must "facilitate" Mr. Godinez Hernandez's return to "ensure that his case is handled as it would have been had he not been improperly [removed]." *Abrego Garcia*, 145 S. Ct. at 1018; *see also Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 WL 1085601, at *1 (D. Md. Apr. 10, 2025) (directing the federal government on remand to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible"); *Lopez v. Blanche*, No. 2:26-cv-01298-CDS-EJY, 2026 WL 1875797, at 4 (D. Nev. June 29, 2026) (ordering the same relief); *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2025 WL 3771402, at *1 (D. Utah Dec. 31, 2025) (same); *Dcosta v. Warden of Immigr. Det. Facility*, 820 F. Supp. 3d 535, 539 (S.D. Tex. 2026) (same). To the extent this information is within their control, Respondents must provide such details as "(1) the current physical location and custodial status of [Mr. Godinez Hernandez]; (2) what steps, if any [they] have taken to facilitate [his] immediate return to the United States; and (3) what additional steps [they] will take, and when, to facilitate his return." *Abrego Garcia v. Noem*, 348 F.R.D. 589, 592 (D. Md. Apr. 15, 2025). Depending on Mr. Godinez Hernandez's current status, facilitation consistent with this order then obligates Respondents "at a minimum, to take the steps available to them toward aiding, assisting, or making easier [for Mr. Godinez Herndandez] . . . resuming his status quo ante," *id.*, and may include taking steps like "providing either transportation to a port of entry or financial support to reach a port of entry," *Vasquez*, 2025 WL 3771402, at *1. Facilitation

is not limited to removing purely domestic obstacles to Mr. Godinez Hernandez's return. *See Abrego Garcia*, 348 F.R.D. at 592 & n.1 (citing caselaw discussing Department of Homeland Security publications and prior practices regarding facilitating the return of wrongfully remove noncitizens).

## III. CONCLUSION

It is therefore ORDERED that Petitioner's motion to enforce (ECF No. 30) is GRANTED.

It is further ORDERED that Respondents must take ALL AVAILABLE STEPS to facilitate Petitioner's return to the U.S. District of Nevada as soon as possible.

It is further ORDERED that Respondents must FILE A DECLARATION OR AFFIDAVIT setting forth (1) affirmative steps taken to facilitate Petitioner's return to the district, and (2) any setbacks during that process. This filing must be made by November 1, 2026. Respondents must file a status report with further updates on the first day of each month thereafter until Petitioner is returned or the Court modifies this order.

It is further ORDERED that, upon Petitioner's return to the district, he is entitled to the relief set forth in this Court's habeas order (ECF No. 16), including immediate release.

Dated this 19th day of October 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE